**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SENECA INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **JAMES RIVER INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant** | § | |

## PLAINTIFF' ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiff Seneca Insurance Company ("Seneca") files this Complaint seeking declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 against Defendant James River Insurance Company ("James River"). Seneca also seeks to recover damages against James River for breach of an insurance policy. This Complaint is for the purpose of determining a question of actual controversy between the parties regarding coverage under a commercial general liability insurance policy, as more fully set out below.

### I.
### JURISDICTION AND VENUE

1.     Plaintiff Seneca is a corporation that is incorporated under the laws of the State of New York. Seneca's principal place of business is in New York.

2.     Defendant James River is a corporation that is incorporated under the laws of the State of Ohio. James River's principal place of business is in Richmond, Virginia. James River is an insurance company that does not have a registered agent for service in Texas. James River is a surplus lines insurer that is not licensed to transact insurance in Texas. Accordingly,

pursuant to Sections 804.106(e) and 804.201(a)(3) of the Texas Insurance Code, James River, as a foreign surplus lines insurer, can be served by serving the Texas Commissioner of Insurance at 333 Guadalupe, Austin, Texas 78701 by hand delivery, and by directing service to James River Insurance Company, 6641 West Broad Street, Suite 300, Richmond, Virginia 23230.

3.      Seneca and James River are citizens of different states, and the matter in controversy in this case exceeds the sum of $75,000, exclusive of interest and costs. Therefore, this Court has jurisdiction by virtue of 28 U.S.C. § 1332.

4.      This Court is a proper venue for this action under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Seneca's claim against James River occurred in this judicial district.  The case involves coverage for claims asserted against an insured of both Seneca and James River in a lawsuit that was filed in Dallas County, Texas.

## II.
### THE UNDERLYING SUIT

5.      On May 23, 2019, Hector Murguia-Bonilla (the "Claimant") filed a lawsuit against several defendants including Busboom Group, LLC (the "Insured"), styled "*Hector Murguia-Bonilla v. Manse Construction, LLC, Busboom Group, LLC, and C3 Construction Services*", Cause No CC-20-00612-B in the County Court at Law No. 2 of Dallas County, Texas (the "Underlying Suit").  A true and correct copy of Plaintiff's First Amended Original Petition in the Underlying Suit (the "Petition") is attached to this Complaint as **Exhibit A**, and is fully incorporated by reference herein.

### A.      Claimant's Allegations in the Underlying Suit

6.      In the Underlying Suit, Claimant has sued Busboom, as well as Manse Construction, LLC ("Manse") and C3 Construction Services, Inc. ("C3 Construction") for injuries Claimant allegedly sustained in a work-related accident while apparently performing

roofing work at an apartment complex (the "Accident").  In the Petition, Claimant alleges as follows:

> On May 23, 2019, [Claimant] was hired by his uncle Jose Daniel Bonilla to work on the replacement of the roof of the parking garage or covered carport for the Club of Riverchase apartment complex owned by [Busboom] in Coppell, Texas.  That was the first and only day that [Claimant] worked at that jobsite.  The danger created by the condition of that roof was not reasonably discoverable by [Claimant] and was concealed from him, even after he inspected that roof before getting up there to work.  In Claimant]'s information and belief, his uncle was an employee of Defendant C3 Construction Services ("C3"); that C3's owner and supervisor Clint Moore was an employee of Defendant Manse Construction. LLC ("Manse"), which was the general contractor on that jobsite hired by Busboom; and that Mr. Moore was authorized by Manse to hire [Claimant] as an employee of Manse on that jobsite.  Alternatively, C3 was Manse's subcontractor, and [Claimant] was hired as C3's employee on that jobsite.  Alternatively, [Claimant]'s uncle was C3's subcontractor.  Regardless, [Claimant] was a business invitee of each Defendant at the time of his on-the-job injuries on May 23, 2019; therefore, each Defendant owed him the duty to provide reasonably safe premises and working conditions.

7.      Claimant asserts in the Petition that Manse and C3 Construction, as employers of Claimant, were negligent and negligent per se in failing to exercise reasonable care by allegedly failing to provide Claimant with a safe place to work, to warn him of the hazards associated with his work, and to provide him with necessary safety, equipment, training, supervision, and assistance for the performance of his job.  Claimant also alleges that all defendants, including Busboom, are liable under premises liability for failing to provide him as their business invitee with reasonably safe premises on which to work, to timely inspect those premises, and to correct or eliminate dangerous conditions on those premises that created an unreasonable risk of harm.

8.      In the Petition, Claimant asserts that he is seeking to recover more than $1,000,000 in damages allegedly caused by the Accident.

**B.     Facts Learned Through Investigation**

9.      Busboom owns and/or manages the apartment complex where Claimant was injured (the "Apartment Complex").   Manse periodically provides maintenance services for Busboom at the Apartment Complex pursuant to a Property Management Service Agreement dated January 30, 2019 (the "PMSA").

10.     On or about May 23, 2019, Manse was replacing shingles and/or conducting other repair work to the roofs of the carports in the Apartment Complex through C3 Construction, which was a subcontractor of Manse.   C3 Construction, in turn, apparently hired Claimant's uncle, Daniel Bonilla ("Bonilla") as a subcontractor on the roof repair project.   Claimant worked for Daniel and/or C3 Construction on that project.

11.     The Accident occurred when Claimant and other workers were standing on a carport roof that buckled and collapsed.   At the time of the Accident, there were approximately 1,500 pounds of shingle materials and 3-7 men on the roof, which was apparently too much weight for the carport to handle.   The Accident occurred when Claimant jumped off the carport roof as it was collapsing.   At the time of the Accident, the workers on the carport roof were primarily employees or contractors of C3 Construction.

12.     Claimant testified in his deposition that Bonilla was an independent contractor of C3, and that Claimant considered himself to be working for Bonilla.   Claimant had an agreement with Bonilla regarding the rate of pay to Claimant for the work he performed.   Under the agreement, Claimant would be paid Monday through Friday depending on what Claimant did. On roofing work, Bonilla would pay Claimant an agreed rate for every 100 square feet of roofing that was completed.   Claimant's paychecks came from Bonilla—not C3, Manse or anyone else. Claimant also testified that no one from Manse ever directed how he performed his work.

**III.**
**THE PMSA**

13.     The roofing work being performed by Manse and its subcontractors when the Accident occurred was governed by the PMSA.   In the PMSA, Manse is identified as "Contractor."  "Owner" is defined in the PMSA to include Busboom.  Among other things, the PMSA requires that Manse provide certain insurance, including commercial general liability insurance, for Busboom (the "Manse Insurance Requirement") in connection with work to be performed by Manse and Manse's employees and subcontractors.

14.     In pertinent part, the Manse Insurance Requirement states as follows:

> Contractor shall obtain, pay for and keep in force at all times during the performance of work, the following insurance coverages ... :
>
> Commercial General Liability ("CGL"), including products/completed operations, independent contractors and a broad form of general liability extension endorsement with a combined single limit for both bodily injury and property damage of at least $1,000,000 per occurrence, $2,000,000 annual aggregate, and to the fullest extent permitted under Chapter 151 of the Texas Insurance Code.  Owner shall be included as an insured under the CGL policy for liability arising out of Contractor's work performed under this Agreement to the extent of liability attributable to the negligence or fault of Contractor, using ISO Additional Insured Endorsements:   CG2010 (07/04), CG2037 (07/04), and CG 33 95 05 12 (or endorsements providing equivalent coverage, including products-completed operations).  Endorsement pages that are incomplete or fail to name the additional insured will be returned.  A stop payment will be placed on all invoices until receipt of a complete Endorsement page.
>
> For purposes of this additional insured requirement, the term "equivalent" coverage means coverage for liability arising out of subcontractor's work performed for Contractor and includes products-completed operations coverage.  This insurance shall apply as primary insurance with respect to any other insurance or self-insurance programs maintained by Contractor. Notwithstanding the foregoing and to the fullest extent permitted under Chapter 151 of the Texas Insurance Code, as to liability of

Owner for bodily injury or death of an employee or agent of
Contractor or Contractor's subcontractor, the additional insurance
provided by Contractor shall provide coverage for the negligence
or fault of Owner, including the sole negligence of Owner.  The
insurance provided by Contractor to Owner as an additional
insured shall be primary and noncontributory to other insurance
available to Owner.

<u>Additional Insured to be listed</u>:  Busboom Group, LLC, Busboom
Management Group, LLC, and their officers, directors, employees,
divisions, subsidiaries, partners, members, managers, shareholders,
affiliated companies, and mortgagees/lenders are included as
additional insureds"

## IV.
### THE JAMES RIVER POLICY

**A.      The James River Policy Covers the Claims Asserted in the Underlying Suit**

15.      James River issued a commercial general liability policy (No. 00089607-0) to

Manse for the policy period of March 3, 2019 to March 3, 2020 (the "James River Policy").

Coverage A in the James River Policy contains the following insuring agreement:

a.      We will pay those sums that the insured becomes legally obligated
to pay as damages because of "bodily injury" or "property
damage" to which this insurance applies. We will have the right
and duty to defend the insured against any "suit" seeking those
damages. However, we will have no duty to defend the insured
against any "suit" seeking damages for "bodily injury" or
"property damage" to which this insurance does not apply. We
may, at our discretion, investigate any "occurrence" and settle any
claim or "suit" that may result.  But:

(1)      The amount we will pay for damages is limited as
described in Section III — Limits Of Insurance; and

(2)      Our right and duty to defend ends when we have used up
the applicable limit of insurance in the payment of
judgments or settlements under Coverages A or B or
medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or
services is covered unless explicitly provided for under
Supplementary Payments — Coverages A and B.

b.      This insurance applies to "bodily injury" and "property damage" only if:

(1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;[and]

(2)      The "bodily injury" or "property damage" occurs during the policy period[.]

16.      The insurance under Coverage A applies only if there is "bodily injury" or "property damage." "Bodily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Claimant alleges in the Underlying Suit that he sustained bodily injury as a result of the Accident.

17.      Additionally, as quoted above, the insurance under Coverage A applies only if the "bodily injury" or "property damage" is caused by an "occurrence." An "occurrence" is defined in the James River Policy as "an accident, including continuous and repeated exposure to substantially the same general harmful conditions." In the Petition, Claimant alleges that Busboom failed to exercise reasonable care in maintaining the safety of the premises on which Claimant was working, to timely inspect those premises, and to correct or eliminate dangerous conditions on those premises. The "occurrence" requirement in the James River Policy is satisfied.

18.      The duty to defend in the James River Policy applies to any "suit" filed against the Insured. The term "suit" is defined as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." The Underlying Suit satisfies this requirement.

19.      The Policy contains some exclusions. James River has the burden to establish the application of any exclusion. Seneca asserts that no exclusion applies, and that the claims and

causes of action brought by Claimant in the Underlying Suit are covered under the James River Policy.

**B.    Busboom is an Additional Insured under the James River Policy**

20.    The James River Policy includes Endorsement No. CG 20 33 04 13 titled "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Agreement With You" (the "Additional Insured Endorsement").  In pertinent part, the Additional Insured Endorsement states as follows:

> **Section II – Who is an Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by
>
> 1.    Your acts or omissions; or
>
> 2.    The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.

21.    As set forth above, (1) the Manse Insurance Requirement in the PMSA expressly requires Manse to maintain commercial general liability insurance and to list Busboom as an additional insured on such policy; (2) the Accident occurred during ongoing operations Manse was conducting for Busboom under the PMSA; (3) Claimant asserts he sustained bodily injury in the course of such ongoing operations; and (4) Claimant asserts the bodily injury was caused, in whole or in part, by Manse and/or those acting on Manse's behalf.  As a consequence, Busboom is an additional insured under the James River Policy with respect to the claims and causes of action brought in the Underlying Suit, and is entitled to coverage under the James River Policy.

**V.**
**SENECA'S SUBROGATION RIGHTS WITH RESPECT TO**
**BUSBOOM RIGHT TO COVERAGE UNDER THE JAMES RIVER POLICY**

22.     Seneca issued a commercial general liability policy (No. GLP4800569) to Busboom covering the policy period from November 30, 2018 to November 30, 2019 (the "Seneca Policy").  The Seneca Policy contains an insuring agreement under Coverage A that is materially the same as that in the James River Policy.  Busboom has requested coverage under the Seneca Policy for the claims asserted in the Underlying Suit.  During the last few months, Seneca has been providing a defense to Busboom in the Underlying Suit under a reservation of its rights under the Seneca Policy.  Based on the terms and provisions of both policies, the Seneca Policy is excess over the James River Policy.

23.     The James River Policy includes Endorsement CB5204US 01-17 titled "Primary and Non-Contributory Endorsement" (the "Primary Coverage Endorsement") that specifically addresses where the James River Policy falls in line with other insurance policies that may also cover additional insureds.  Under its express terms, the Primary Coverage Endorsement applies to all additional insureds for whom Manse has agreed to provide liability insurance.  With respect to priority, the Primary Coverage Endorsement states as follows:

> Any coverage provided to an Additional Insured under this policy shall be excess over any other valid and collectible insurance available to such Additional Insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance apply on a primary and noncontributory basis.

24.     As quoted above, the Manse Insurance Requirement in the PMSA states that "[t]he insurance provided by [Manse] to [Busboom] as an additional insured shall be primary and noncontributory to other insurance available to [Busboom]."   Accordingly, the insurance

provided to Busboom in the James River Policy, as required by the Manse Insurance Requirement, is primary and noncontributory.

25.     The Seneca Policy states that coverage under the Seneca Policy is generally primary, with some exceptions.  According to the "other insurance" provision, the Seneca Policy is excess over "[a]ny other primary insurance available to [Busboom] covering liability for damages arising out of the premises or operations ... for which you have been added as an additional insured."  The additional insured coverage for Busboom under the James River Policy falls within this exception.  Because both the James River Policy and the Seneca Policy agree that the Seneca Policy is excess over the James River Policy, the James River Policy is primary and James River should provide a defense to Busboom before any duty to defend is triggered under the Seneca Policy.

26.     As stated above, Seneca has been and is currently providing a defense to Busboom in the Underlying Suit.  The following provision in the Seneca Policy addresses what happens when the Seneca Policy is excess over another policy:

> When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit."  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Based on this provision, Seneca is contractually subrogated to Busboom's right to defense costs from James River under the James River Policy, and Seneca has standing to assert the coverage claims against James River that are set forth in this Complaint.

## VI.
### CAUSES OF ACTION

**A.     Breach of Contract**

27.     Seneca repeats and re-alleges all of the allegations contained in all prior paragraphs of this Complaint as if completely and fully set forth herein.

28.     Seneca provided James River with timely notice of the claims asserted against Busboom in the Underlying Suit and Seneca's defense of Busboom in the Underlying Suit. Seneca also provided James River with timely notice of Seneca's demand that James River provide a defense and indemnity to Busboom in the Underlying Suit and reimburse Seneca for attorneys' fees and expenses incurred by Seneca in its defense of Busboom.   Seneca has complied with all necessary conditions and other terms of the James River Policy or is otherwise excused from the performance of those conditions and terms.

29.     Pursuant to the terms of the James River Policy and the PMSA, Busboom is an additional insured under the James River Policy.   As a consequence, James River was and is required to defend Busboom in the Underlying Suit and indemnify Busboom from liability in the Underlying Suit.   However, James River refused to provide Busboom with a defense in the Underlying Suit and otherwise provide any coverage to Busboom under the James River Policy. James River's failure and/or refusal to provide a defense to Busboom is a breach of the express terms of the James River Policy and a breach of contract. As a result of James River's breach of contract, Seneca, as subrogee of Busboom, has sustained and is continuing to sustain damages through incurring and paying attorneys' fees and litigation expenses in its ongoing defense of Busboom in the Underlying Suit.

30.     All conditions precedent to Seneca's recovery for breach of contract have been performed or have occurred as required under Texas law.

31.     Seneca has provided James River with written demands regarding the claims set forth in this Complaint more than thirty (30) days before filing this lawsuit.  Because of James River's failure and refusal to comply with its contractual obligations, Seneca has been required to retain the services of legal counsel to prosecute this action.  Seneca is entitled to recover its reasonable attorneys' fees and expenses in connection with this action, including such fees and expenses that may be incurred in any future appeals to any court of appeals and any review by the Texas Supreme Court.  Accordingly, Seneca seeks recovery of its reasonable and necessary attorneys' fees, costs and expenses through trial and all appeals under applicable Texas law, including but not limited to Chapter 38 of the Texas Civil Practice & Remedies Code.

32.     Seneca is entitled to and seeks to recover pre-judgment and post-judgment interest in accordance with Chapter 304 of the Texas Finance Code and any other applicable law.

**B.     Declaratory Judgment**

33.     Seneca repeats and re-alleges all of the allegations contained in all prior paragraphs of this Complaint as if completely and fully set forth herein.

34.     The James River Policy is a valid and enforceable contract between James River and Manse.  By virtue of the Manse Insurance Requirement in the PMSA, Busboom is an additional insured and is entitled to coverage under the James River Policy.

35.     This case presents an actual controversy within the jurisdiction of this Court and involving rights and liabilities under a contract of liability insurance, which controversy may be determined by a judgment of this court, without other suits.  A justiciable controversy exists as to Seneca's claim that James River is required to provide a defense to Busboom in the Underlying Suit, and to reimburse Seneca for attorneys' fees and litigation expenses paid and incurred by Seneca in defending Busboom in the Underlying Suit.

36.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Seneca is entitled to and asks the Court to make the following declarations in this case:

a.     Busboom is an additional insured under the James River Policy;

b.     Busboom is entitled to a defense from James River under the James River Policy for the claims asserted against Busboom in the Underlying Suit;

c.     Despite demands for coverage, James River has failed to provide a defense to Busboom under the James River Policy, and has therefore breached the James River Policy;

d.     Seneca is a subrogee of Busboom with respect to the defense Seneca has been providing to Busboom in the Underlying Suit, and Seneca is entitled to enforce Busboom's right to a defense in the Underlying Suit under the James River Policy;

e.     The Seneca Policy is excess to the James River Policy with respect to Busboom's claim for a defense with respect to the claims asserted by Claimant against Busboom in the Underlying Suit; and

f.     James River is obligated under the James River Policy to take over the defense of Busboom in the Underlying Suit, and to reimburse Seneca for all attorneys' fees and other defense costs incurred by Seneca during the time Seneca has provided a defense to Busboom.

## VII.
### PRAYER

Based on the foregoing considerations, Plaintiff Seneca Insurance Company respectfully prays that:

1.      The Court determine and adjudicate the right and liabilities of the parties with respect to the James River Policy.

2.      The Court find and issue a declaratory judgment in favor of Seneca, as follows:

      a.      Busboom is an additional insured under the James River Policy;

      b.      Busboom is entitled to a defense from James River under the James River Policy for the claims asserted against Busboom in the Underlying Suit;

      c.      Despite demands for coverage, James River has failed to provide a defense to Busboom under the James River Policy, and has therefore breached the James River Policy;

      d.      Seneca is a subrogee of Busboom with respect to the defense Seneca has been providing to Busboom in the Underlying Suit, and Seneca is entitled to enforce Busboom's right to a defense in the Underlying Suit under the James River Policy;

      e.      The Seneca Policy is excess to the James River Policy with respect to Busboom's claim for a defense with respect to the claims asserted by Claimant against Busboom in the Underlying Suit; and

      f.      James River is obligated under the James River Policy to take over the defense of Busboom in the Underlying Suit, and to reimburse Seneca for all attorneys' fees and other defense costs incurred by Seneca during the time Seneca has provided a defense to Busboom.

3.      The Court enter a judgment in favor of Seneca and against James River based on Seneca's breach of contract cause of action, and award Seneca damages against James River for all attorneys' fees and litigation expenses Seneca has incurred and will incur in providing a defense to Busboom in the Underlying Suit.

4.      The Court award Seneca all of Seneca's reasonable attorneys' fees and expenses incurred in the trial court and through any and all appeals to the court of appeals and the Texas Supreme Court.

5.      The Court award Seneca all of its costs of suit in this action.

6.      The Court award Seneca pre-judgment interest as provided by law.

7.      The Court award Seneca post-judgment interest as provided by law.

8.      The Court award Seneca any other and further relief of any nature to which it may

be justly entitled.

Respectfully submitted,


By:   */s/ David M. Macdonald*
**David M. Macdonald, Attorney-in-Charge**
Texas Bar No. 12755300
DMacdonald@MacdonaldDevin.com
**Steven R. Baggett**
Texas Bar No. 01510680
SBaggett@MacdonaldDevin.com
**Macdonald Devin Ziegler Madden**
**Kenefick Harris, P.C.**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2130
214.744.3300 Telephone
214.747.0942 Facsimile

**ATTORNEYS FOR PLAINTIFF**
**SENECA INSURANCE COMPANY**